IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LUCIANO AVENDAN MONTOYA and JOSE SANCHEZ-LUGO,<br><br>Defendants. | **MEMORANDUM DECISION – REPORT and RECOMMENDATION on SANCHEZ-LUGO'S MOTION TO SUPPRESS and<br>ORDER and REPORT and RECOMMENDATION on MONTOYA'S MOTION FOR RENEWAL**<br><br>Case No: 2:04-CV-673 DB<br><br>District Judge Dee Benson<br>Magistrate Judge David Nuffer |

This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B) and is presently before the court on Defendant Jose Sanchez-Lugo's Motion to Suppress[1] and Defendant Luciano Avendan Montoya's "Motion for Renewal of Defendant's Motion to Suppress."[2]

**Procedural History**

Initially, Defendant Sanchez-Lugo moved to suppress evidence on both Fourth and Fifth Amendment grounds. Co-defendant Luciano Avendan Montoya joined in that original suppression motion.[3] However, after the government provided additional discovery, Defendant

---

[1] Motion to Suppress Evidence Obtained in Violation of Defendant's Fourth and Fifth Amendment Rights and *Miranda*, filed November 4, 2004, docket no. 26.

[2] Docket no. 71, October 25, 2005.

[3] *See* Motion to Join Co-defendant's Motion to Suppress Evidence, filed November 5, 2004, docket no. 27.

Sanchez-Lugo felt that his motion to suppress related to the stop, on Fourth Amendment grounds, could no longer be supported and he withdrew that portion of his motion.[4]  He chose to proceed with his motion to suppress his statements under the Fifth Amendment and *Miranda*.[5]  Thus, the motion Defendant Montoya originally sought to join was considerably reduced in scope.

At the hearing on the motion to suppress, Defendant Montoya asked to strike his motion to join in Sanchez-Lugo's motion to suppress.[6]  Defendant Montoya also asked to strike a motion for discovery after receiving all discovery.[7]  The motions to strike were granted and the court proceeded with the hearing on the motion to suppress only as to the statements made by Defendant Sanchez-Lugo at the scene.[8]  Montoya and his counsel left and did not participate in that hearing.[9]

Subsequently, the parties notified the court that negotiations were underway.  Counsel stipulated to delay the report and recommendation on Sanchez-Lugo's motion to suppress while plea negotiations proceeded.[10]

---

[4]Minute entry for status conference, docket no. 47, June 7, 2005, tape #301 at log #600; Transcript of June 29, 2005 Hearing (Tr.) Part II at 4.

[5]*Id*.

[6]Minute entry for proceedings on Motion to Suppress, docket no. 50, June 29, 2005.  Tr. Part I at 3-4; Tr. Part II at 3.

[7]Tr. Pa2t II at 3.

[8]*Id*.

[9]*Id*.

[10]Minute entry for status conference, docket no. 60, September 15, 2005; Order, docket no. 64, September 20, 2005 (stipulation to extend time to rule on pending motion to suppress while parties negotiate).

The parties later informed the court that negotiations had deteriorated.[11] New counsel for Montoya then informed the court that he intended to file his own motion to suppress, and the court set a deadline to file the new motion.[12] But Montoya did not file a new motion as indicated and instead filed a motion for renewal of Montoya's previously withdrawn motion to join in Sanchez-Lugo's motion to suppress.[13]

After carefully reviewing the memoranda submitted by the parties, the facts of this case and the relevant law, the court enters this Order and Report and Recommendation to deny Montoya's Motion for Renewal of Motion to Suppress and to grant Sanchez-Lugo's Motion to Suppress.

### *Montoya's Motion for Renewal of Motion to Suppress*

Montoya has never filed a motion to suppress, but his former counsel only filed a motion to join Sanchez-Lugo's original motion to suppress on both Fourth and Fifth Amendment grounds.[14] Both of these motions were filed before defendants received complete discovery from the government.

After the government provided additional discovery, co-defendant Sanchez-Lugo withdrew his motion to suppress based upon the stop and Fourth Amendment grounds indicating

---

[11] Minute entry for change of plea hearing, docket no. 70, October 18, 2005.

[12] *Id.*

[13] Motion for Renewal of Defendant's Motion to Suppress, docket no. 71, October 25, 2005.

[14] *See* Motion to Join Co-defendant's Motion to Suppress Evidence, filed November 5, 2004, docket no. 27.

to the court that the additional discovery provided no basis to proceed on that issue.[15]  The discovery revealed that a confidential informant provided information leading to the stop.  Likewise, after receiving the additional discovery from the government, Montoya's counsel, after consulting with Montoya, moved to strike the motion for discovery and to strike the motion to join in Sanchez-Lugo's motion to suppress because there were no longer any issues pertaining to Montoya.[16]  Montoya was present in the courtroom at the hearing when his counsel requested to strike his joinder in the suppression motion.[17]  Montoya's counsel stated he had discussed striking the motions with his client.[18]  After the court granted the motions, both Montoya and his counsel were excused and did not participate in the hearing to suppress Sanchez-Lugo's statements.[19]

Prior to filing his recent "motion to renew," Montoya's counsel represented to the court that he would not be filing a "generic motion, but a very specific motion" raising issues pertaining to Montoya.[20]  Instead, counsel filed a motion asking the court to "renew the motion to suppress (see Docket # 27) filed on [Montoya's] behalf by former counsel, Soloman Chacon, Esq."[21]  The motion to renew is supported by Montoya's affidavit that he did not agree to

---

[15] Minute entry for status conference, docket no. 47, June 7, 2005, tape #301 at log #600; Tr. of June 29, 2005 hearing, Part II at 4.

[16] Minute entry for proceedings on Motion to Suppress, docket no. 50, June 29, 2005, tape #305 at log #5160; Tr. Part I at 3-4; Tr. Part II at 3.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Minute entry for change of plea hearing, docket no. 70, October 18, 2005 tape #333 at log #4065.

[21] Motion for Renewal of Defendant's Motion to Suppress at 1.

withdrawal of his motion to join in Sanchez-Lugo's motion to suppress.[22]

The current motion to renew and the earlier motion to join do not comply with the local rule because they fail to "state with particularity . . . (I) the basis for standing; (ii) the evidence for which suppression is sought; and (iii) a list of the issues raised as grounds for the motion."[23] Since the court has previously stricken any motion to suppress for Montoya at counsel's request in open court, and since the motion to renew and motion to join fail to comply with the rule requiring some basis to be stated in a motion to suppress, Montoya can have no relief. To the extent that the Motion for Renewal of Montoya's Motion to Suppress is non-dispositive, it is DENIED, and to the extent that it may be construed as a motion to suppress, the magistrate judge recommends it be denied.

### *Sanchez-Lugo's Motion to Suppress Statements*

#### Summary of Testimony

On September 3, 2004, Defendant Jose Sanchez-Lugo was a passenger in a car that was stopped as part of a narcotics investigation by the Utah County Major Crimes Task Force.[24] A vehicle stop was made on the basis of information provided by the confidential informant.[25] Based on information provided by the confidential informant, the target of the investigation was

---

[22] The motion to renew (docket no. 71) and affidavit (docket no. 72) speak of a "motion to suppress" filed on Montoya's behalf. Motion at 1 and Affidavit ¶¶ 5, 7 and 9. Technically, there is no such motion; only a motion to join with Sanchez-Lugo's motion.

[23] DUCrimR 12-1(d).

[24] Tr. Part II at 9-11.

[25] *Id.* at 9.

the driver, co-defendant Montoya.[26]  The confidential informant never identified Sanchez-Lugo as part of the investigation.[27]

     During the stop, the officer initiating the stop placed the driver, co-defendant Montoya, under arrest after finding cocaine in Montoya's wallet.[28]  Officer Theron Leany, a Spanish speaking officer with the Orem City Police, gave *Miranda* warnings to the driver Montoya and asked Montoya some questions.[29]  Leany then approached Sanchez-Lugo and asked him preliminary questions, such as his name, where he was from, and why he was there.[30]  He proceeded to ask further investigatory questions about why the canine would indicate the presence of drugs in the car.[31]  The officer testified that he did not give *Miranda* warnings to Sanchez-Lugo prior to questioning[32] and Leany's reports have no indication that *Miranda* warnings were given to Sanchez-Lugo.[33]  Officer Leany stated that his main focus of attention and inquiry was the driver identified by the confidential informant.[34]

---

[26]*Id.* at 9, 26.

[27]*Id.* at 25, 57, 66.

[28]*Id.* at 10, 56.

[29]*Id.* at 28.

[30]*Id.* at 13-14.

[31]*Id.* at 14.

[32]*Id.* at 13, 16.

[33]*Id.* at 30-31.

[34]*Id.* at 14.

After speaking with Sanchez-Lugo, Leany returned to questioning the arrested driver.[35] As Leany left Sanchez-Lugo to speak to the driver, he saw Officer Ruiz of the Orem City Police Department and Agent Gamarra of U.S. Immigration and Customs Enforcement (ICE) approach Sanchez-Lugo and begin speaking to him.[36] He said both officers were needed because Officer Ruiz did not speak Spanish, and Agent Gamarra was acting as an interpreter.[37]

When Officer Ruiz and Agent Gamarra approached Sanchez-Lugo, he was handcuffed.[38] Officer Ruiz asked Agent Gamarra to assist him in translating while he questioned Sanchez-Lugo because Ruiz does not speak or understand Spanish.[39] Agent Gamarra testified that when he approached Sanchez-Lugo he pulled out a card he carries and read the *Miranda* rights in Spanish from a card, and that the defendant waived these rights.[40] Agent Gamarra did not write a report in this case to show he gave *Miranda* warnings and Office Ruiz's report does not contain any indication that he or Agent Gamarra, acting as his translator, gave *Miranda* warnings to Sanchez-Lugo.[41] Ruiz also testified that he personally did not give any *Miranda* warnings to Sanchez-Lugo.[42] No written or signed waiver of Sanchez-Lugo's *Miranda* rights was obtained or admitted

---

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Id.* at 39, 53, 57, 63.

[39]*Id.* at 39, 58, 59-60, 67.

[40]*Id.* at 39, 41-44.

[41]*Id.* at 47, 59, 63.

[42]*Id.* at 58-59.

into evidence.

Agent Gamarra began translating questions from Officer Ruiz about the presence of drugs in the car and the defendant denied any knowledge of drugs in the vehicle.[43] After the drugs were discovered in the passenger air bag compartment by the searching officers, Ruiz asked Sanchez-Lugo, through Gamarra, if his fingerprints would be found on the package.[44] Gamarra and Ruiz testified that in response to the question, Sanchez-Lugo hung his head and was silent.[45] Then Ruiz stated, through Gamarra, that prints would be taken from the package and again asked the defendant if his prints would be on the package.[46] According to the officers' testimony, Sanchez-Lugo said that his prints would be on the package because he had put the package in its place in the vehicle as instructed by Montoya.[47] Ruiz testified that he never placed Sanchez-Lugo under arrest.[48]

At that point, Ruiz asked Officer Leany to continue the questioning so that a translator would not slow down the interrogation and Agent Gamarra left the scene.[49] Leany says he believed Ruiz and Gamarra gave *Miranda* warnings to Sanchez-Lugo, although they did not tell

---

[43]*Id.* at 45, 60.

[44]*Id.* at 46, 61.

[45]*Id.* at 46.

[46]*Id.* at 46, 61.

[47]*Id.*

[48]*Id.* at 62-63.

[49]*Id.* at 53, 61.

him that directly.[50] Leany continued along the same line of questioning, and asked Sanchez-Lugo if was surprised about the package in the compartment.[51] Leany stated that in response to the question, Sanchez-Lugo hung his head and said his didn't know anything about it.[52] Leany continued by asking the defendant how the compartment worked, and Sanchez-Lugo stated he did not know how it worked.[53] He said that Montoya controlled it, opened it, then handed him the package and told him to put it in the compartment.[54] Sanchez-Lugo stated several times that was all he did and that was his only involvement.[55] Leany confirmed that co-defendant Montoya also told him that Sanchez-Lugo knew nothing about and had no involvement with the drugs.[56] Leany also testified that he asked Sanchez-Lugo if his fingerprints would be found on the package of drugs, and that Sanchez-Lugo first denied, and then admitted his fingerprints would be present.[57]

Officer Leany reconfirmed that Sanchez-Lugo was handcuffed and not free to leave during the entire course of questioning.[58] Leany stated that he thought Sanchez-Lugo was under

---

[50] *Id.* at 29.

[51] *Id.* at 17-18.

[52] *Id.* at 19.

[53] *Id.*

[54] *Id.* at 19-20.

[55] *Id.* at 20.

[56] *Id.* at 27.

[57] *Id.* at 29-30.

[58] *Id.* at 23.

arrest after the drugs were found, but that he did not arrest him and he was not sure who did.[59] Leany testified that he never gave Sanchez-Lugo *Miranda* warnings.[60]

Finally, Sanchez-Lugo testified that he was not given *Miranda* warnings by any officers at the scene.[61]

## Analysis

When an individual is subjected to a custodial interrogation, any inculpatory statements may not be used unless the individual is given the procedural protections against self-incrimination set forth in *Miranda v. Arizona*.[62] In the context of motions to suppress, the government bears the burden to prove, by a preponderance of the evidence, that a warning was properly given and that rights were knowingly waived.[63]

There are many facts in this case which are clear. It is clear that Sanchez-Lugo was in custody for the purposes of *Miranda*.[64] He was detained in handcuffs outside the vehicle shortly after the stop. He was not free to leave and was handcuffed throughout the time he was being questioned by the officers. Consequently, Sanchez-Lugo was entitled to a proper *Miranda* warning.

---

[59] *Id.* at 23-24.

[60] *Id.* at 13, 16.

[61] *Id.* at 69.

[62] 384 U.S. 436, 444-45 (1966).

[63] *See Medina v. California,* 505 U.S. 437, 451-52 (1992) (government bears burden of proof when seeking to introduce inculpatory evidence obtained by waiver of, or in violation of, defendant's constitutional rights); *Colorado v. Connelly,* 479 U.S. 157, 168 (1986) (waiver of *Miranda* rights); *North Carolina v. Butler*, 4441 U.S. 369, 373 (1979) (same).

[64] *Miranda*, 384 U.S. 444 and n. 4.

It is also clear that the first officer to question Sanchez-Lugo, Officer Leany, did not give any *Miranda* warnings. He testified that he did not give any warnings and his report contains no indication of any *Miranda* warnings given to Sanchez-Lugo. Leany's preliminary identifying questions regarding the defendant's name and residence would not require *Miranda* warnings because they were not intended to elicit an incriminating response for investigatory purposes.[65] Any further investigatory questions by any of the officers regarding the compartment or placement of drugs in the vehicle would require a *Miranda* warning.

However, the balance of the testimony about *Miranda* warnings and waiver is not clear. Although Agent Gamarra testified that he read Sanchez-Lugo his *Miranda* rights in Spanish, this is not corroborated in any of the officers' reports,[66] and it is flatly denied by Sanchez-Lugo. While Ruiz testified that Gamarra gave Sanchez-Lugo *Miranda* warnings,[67] Ruiz does not speak or understand Spanish and did not say that he heard Gamarra give the warning or obtain a valid waiver of rights from the defendant. If *Miranda* warnings were given and waived prior to questioning, it would be expected that this important fact would be documented in Ruiz's report since Ruiz was conducting the interrogation. The officers' testimony on the warning and waiver was muddled and without documentary support in any report or in the form of a signed waiver document.

---

[65]*See Pennsylvania v. Muniz,* 496 U.S. 582, 600-603 (1990); *United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993).

[66]Tr. Part II at 59, 63.

[67]*Id.* at 58.

Further, the officers' testimony about the interrogation was inconsistent and not entirely credible. Gamarra and Leany testified that in their *two consecutive interrogations* Sanchez-Lugo had the same response of "hanging his head" and denial when asked whether he knew about the compartment and whether his fingerprints were on the drugs.

**Officer Gamarra** (as to questioning by Officer Ruiz):

A   . . . Officer Ruiz asked Mr. Sanchez once again about the narcotics. Mr. Sanchez stated he did not know anything about it. Officer Ruiz then asked Mr. Sanchez if we were going to find his fingerprints on the narcotics. At that point, Mr. Sanchez was quiet for awhile, kind of looked down. Mister -- Officer Ruiz asked him again, you know, that we're going to take his fingerprints and also fingerprint the packaging. And at that point, Mr. Sanchez did acknowledge that, yes, he was aware of the narcotics, and he was the one who placed it into the glove -- or air bag compartment, passenger air bag compartment.
Q.  Did he state whether his fingerprints would be on the package?
A.  Yes. He stated his fingerprints would be on the package.[68]

**Officer Leany:**

Q.  [D]id he have a response to whether he would be surprised about the methamphetamine being in the vehicle?
A.  In regards to the question about the compartment, he was -- he just kind of at that point, he ducked his head and said he didn't know anything about it.
Q.  Okay. Did you ask him if he knew how to open the secret compartment?
A.  I did. He stated that he did not know how, that he didn't that's the only thing he knew about it.[69]

Q.  So did you ask him several times if his fingerprints would be found on any of the packages?
A.  I don't know about several. I believe I asked him the first time, he denied it. And when I asked him the second time and asked in regards to him having any

---

[68]*Id*. at 45-46.

[69]*Id*. at 19.

      indications or drug on his hands, that's when he told me that, yes, he would, and that he touched the packaging.[70]

It is not credible that Sanchez-Lugo would deny and admit to Gamarra and Ruiz and then immediately thereafter, in an entirely separate interrogation, deny and admit again to Leany *and* use the same body language in both instances.  It is likely that the officers' review of each others' reports[71] has confused their recollections.  This lack of credibility impairs court's ability to believe the one officer's testimony about the *Miranda* warnings.

      Finally, the most significant factor in support of the recommended findings is that during the hearing, I observed the demeanor of the witnesses, the topics on which they hesitated and those on which they were clear, and the need to refresh recollection with reports.[72]  After hearing and observing all the testimony, I find that the testimony of warnings and waiver is not sufficient to carry the government's burden to show that *Miranda* warnings were properly given and a valid waiver was obtained.

      The target of this investigation was Montoya, the driver of the vehicle.  The confidential informant identified Montoya to both Officers Leany and Ruiz at the time of the stop.  Leany testified that main focus of his attention and inquiry was on the driver of the vehicle.  It appears this investigation was so focused on the driver and locating the drugs in the car that providing *Miranda* warnings to the detained passenger was overlooked.

---

[70]*Id*. at 29-30.

[71]*Id*. at 47-48.

[72]*Id*. at 18.

**Recommendation**

The magistrate judge finds that the government has failed to prove, by a preponderance of the evidence, that Sanchez-Lugo received *Miranda* warnings and knowingly waived his Fifth Amendment rights prior to custodial interrogation. Accordingly, the magistrate judge recommends that the Motion to Suppress should be granted and statements made by Sanchez-Lugo be suppressed.

The magistrate judge also recommends that Montoya's Motion for Renewal be denied.

Further, it is recommended that any order of the district judge regarding this Report and Recommendation should exclude from the computation of the Speedy Trial Act, the time from the filing of the Motion to Suppress through the date of entry of the order of the district judge.

**Notice**

Copies of the foregoing Report and Recommendation are being delivered to the parties, who are hereby notified that they have the right to object to the Report and Recommendation. The parties are further notified that they must file any objections to the Report and Recommendation with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 2nd day of November, 2005.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge